ESTATE OF Joe L. BYNUM, by and through its Special Administrator, Scott G. Iverson, and Lila Bynum, Plaintiffs—Appellees,

v.

Joanna H. MAGNO, M.D., Defendant—Appellant,

and

Michael H. Dang, M.D., et al., Defendants.

No. 01–16541.

D.C. No. CV–99–00927–KSC.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2002.

Decided Jan. 14, 2003.

Before SCHROEDER, Chief Judge, ALARCÓN and FISHER, Circuit Judges.

## MEMORANDUM **

Defendant–Appellant Joanna H. Magno, M.D. ("Dr.Magno"), appeals from the dis-

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

trict court's grant of judgment as a matter of law ("JMOL") pursuant to Rule 50(a) of the Federal Rules of Civil Procedure in favor of cross-claim defendant John P. Callan, M.D. ("Dr.Callan"), and the entry of a judgment awarding damages to Joseph and Lila Bynum (collectively "the Bynums"). We reverse the JMOL because the record shows that sufficient evidence was presented at trial to support a finding that Joseph Bynum ("Mr.Bynum") was injured as the result of Dr. Callan's negligence. We also reverse the award of damages to the Bynums because the striking of Dr. Callan's name from the special verdict form denied Dr. Magno a fair trial on the issue of her liability for damages. The pertinent facts and procedural posture of this case are known to the parties. Therefore, we proceed directly to the issues presented in this appeal.

## I.

Dr. Magno contends that the district court erred in granting the Bynums' motion for a JMOL regarding her cross-claim against Dr. Callan because there was sufficient evidence of Dr. Callan's negligence to submit the question to the jury. A grant of a motion for a JMOL under Rule 50(a) is reviewed de novo and under federal law. *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir.2000).

### A.

■ Dr. Magno maintains that the Bynums forfeited their right to object to the admission of Dr. Preston's opinion regarding Dr. Callan's breach of the applicable standard of care because they did not make a contemporaneous objection to its admissibility, nor did they move to strike Dr. Preston's opinion. We agree. A party who fails to make a contemporaneous objection to the introduction of testimony at trial forfeits its right to contest the use of

that evidence in a motion for judgment as a matter of law. *See, e.g.,* FED.R.EVID. 103(a) (providing that a party objecting to the admission of evidence must make "a timely objection or motion to strike" before the district court); *Kelly v. City of Oakland,* 198 F.3d 779, 786 (9th Cir.1999) (holding that because an objection to testimony was not made at trial but in the defendants' Rule 50(b) motion the objection came too late to advise the court that the in limine order was being violated).

### B.

■ Dr. Magno also asserts that the Bynums should be judicially estopped from arguing that Dr. Preston was not qualified as a witness to testify that Dr. Callan breached his duty of care. In *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782–83 (9th Cir.2001), we applied the three factors the Supreme Court has identified as appropriate in deciding whether to apply the doctrine of judicial estoppel: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party persuaded a court to accept the party's earlier position; (3) whether the party "seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (quoting *New Hampshire v. Maine,* 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)).

The Bynums' conduct has met the above factors. The record shows that the Bynums took inconsistent positions over the course of the trial regarding Dr. Preston's competency to testify as to Dr. Callan's standard of care. In opposing Dr. Callan's motion for summary judgment, the Bynums stated that "[t]he testimony of Dr. Thomas Preston ... establishes that Callan's care of Joe Bynum fell below the standard of care." However, in arguing

that a JMOL should be granted on Dr. Magno's cross-claim against Dr. Callan, the Bynums stated: "There is not an adequate foundation or basis to keep [Dr. Preston's testimony] in this case.... Doctor Preston was not qualified as a pulmonologist, not qualified to render testimony as to the standard of care of a pulmonologist." These two positions are flatly inconsistent with each other.

In denying Dr. Callan's motion for a summary judgment the court stated that the Bynums had submitted "expert declarations which provide that [Dr. Callan's] care of plaintiff in the form of his consultation was not up to medical standards." Dr. Magno apparently relied on the Bynums' pretrial representation to the court that Dr. Preston *was* qualified to testify as to Dr. Callan's standard of care to her detriment.

The Bynums maintain that Dr. Magno "knew that the Bynums intended to move for judgment as a matter of law on her cross-claim against Dr. Callan." At a hearing immediately after the Bynums rested their case in chief, Bynums' counsel stated that "with respect to [Dr. Callan] being an adverse witness, there is no medical testimony or no expert identified by the *defendants* that will establish that Doctor Callan fell below the standard of care." (emphasis added). This assertion did not alert Dr. Magno that the Bynums had abandoned their position that Dr. Preston, who had already testified as a *plaintiffs'* witness, was qualified to testify that Dr. Callan's conduct did not comply with the applicable standard of care. By waiting until after both sides had rested to contend that Dr. Preston was not qualified to opine regarding the standard of care of a consultant to a cardiologist, the Bynums unfairly misled Dr. Magno into the conclusion that she did not need to retain an expert witness on this seemingly undisputed factual

issue. We are persuaded that the Bynums should be judicially estopped from arguing that Dr. Preston was not qualified to testify as to Dr. Callan's standard of care.

## C.

■ Dr. Magno also contends that there was sufficient evidence of Dr. Callan's negligence to submit her cross-claim to the jury. Whether evidence is sufficient to warrant giving a case to the jury is determined under Rule 50(a) of the Federal Rules of Civil Procedure. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." *Id.* at 150, 120 S.Ct. 2097. "If conflicting inferences may be drawn from the facts, the case must go to the jury." *Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1060 (9th Cir.2000) (quoting *Pierce v. Multnomah County,* 76 F.3d 1032, 1037 (9th Cir.1996) (internal quotation marks and citations omitted)).

To establish a prima facie case for medical malpractice under Hawaii law, a party must show a duty owed by the defendant to the plaintiff, a breach of that duty, a causal relationship between the breach and the injury suffered. *Bernard v. Char,* 79 Hawai'i 371, 903 P.2d 676, 682 (Haw.Ct. App.1995). In order to show duty and breach in a malpractice suit, the plaintiff must establish the standard of care of the defendant doctor by expert testimony. *Craft v. Peebles,* 78 Hawai'i 287, 893 P.2d 138, 149 (Haw.1995).

Dr. Callan testified that he had a duty to evaluate the pulmonary risks of complications that could occur following the CABG surgery. He testified that the goal of a preoperative evaluation is to ensure that "the pulmonary risk factors are not so severe that the surgery would be danger-

ous." As Dr. Magno's consultant, Dr. Callan was required to communicate the risks of surgery to Dr. Magno and Mr. Bynum. One of the common risks of CABG surgery is injury to the phrenic nerve. Dr. Callan acknowledged that a patient with COPD who develops bronchitis or pneumonia after surgery would be "less able to cope with the consequences" of phrenic nerve injury. Although Dr. Callan discussed the possibility of bronchitis and pneumonia with Mr. Bynum, he did not discuss the risks associated with phrenic nerve injury.

Dr. Callan acknowledged that he had a specific duty to determine the severity of Mr. Bynum's COPD and convey that information to Dr. Magno. Dr. Callan explained that in order to determine the severity of Mr. Bynum's COPD, it was necessary to look at the patient's "blood gas" level and his level of activity. However, Dr. Callan admitted that he only looked at one of Mr. Bynum's blood gas studies and never got any information about what his blood gas studies had previously shown at other institutions. Dr. Callan also testified that he did not perform a basic pulmonary function test, which is one measure of the severity of COPD. Dr. Callan testified that he did not feel that it was necessary to obtain Mr. Bynum's previous medical records or consult with his mainland physicians. He also conceded that in his deposition he had testified that without Mr. Bynum's past medical records he lacked complete information to determine whether Mr. Bynum's COPD was moderate or severe.

Dr. David Fergusson, Dr. Magno's cardiology expert, testified that it was "very appropriate" for Dr. Magno to call in a pulmonologist for a consultation "to know if the pulmonary condition was so severe that that would make the risk of surgery greater than the risk of not doing the surgery." Dr. Fergusson testified that under the circumstances present in this case, a cardiologist has the right to rely on the consulting pulmonologist to determine what information he needs to make an adequate evaluation, and would expect the pulmonologist to discuss the pulmonary risks of surgery with the patient. Dr. Fergusson testified that "the pulmonologist is the man who really knows about the lungs and he is the man who's most appropriate to explain to the patient what the . . . lung situation is."

Dr. Preston testified that if a cardiologist has concern about the scope of his or her knowledge the "appropriate thing to do is to get a consultant." He testified that Doctor Magno was correct in calling in a pulmonologist to evaluate Mr. Bynum and that if he had been in Dr. Magno's position he would have "done exactly the same thing." Dr. Preston testified that he would also have expected Dr. Callan to convey his evaluation to Dr. Magno and to Mr. Bynum. Dr. Preston agreed that "Dr. Magno . . . would have a right to expect that [Dr. Callan] could know what to do to evaluate his part of the case . . . he would then be expected to communicate his thoughts on that aspect of the case to the patient." Dr. Preston also testified that "Dr. Callan . . . violated standards of care in terms of his role in getting information and conveying information to the patient."

The Bynums point to *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600 (9th Cir. 2002), for the proposition that bits and pieces of testimony can not give rise to a triable issue of fact. *Id.* at 607. In *Domingo*, the plaintiff offered stray comments out of the context in which they were presented from the depositions of the defendants' experts in an attempt to create a triable issue of fact regarding causation. *Id.* We noted in *Domingo* that the none of the defendants' experts testified that in their opinion the defendants' conduct

caused the plaintiff's injuries. We also pointed out that all of the defendants' experts testified that "they could not say with reasonable scientific probability" that the plaintiff's physician's surgical procedure caused severe brain damage. *Id.* at 608. Here, by contrast, Dr. Preston, one of the plaintiffs' experts, testified that Dr. Callan "violated standards of care in getting information and conveying information to the patient." Dr. Magno has not taken this testimony out of context. Nowhere in Dr. Preston's testimony did he state that Dr. Callan did not violate the standard of care he owed to his patient as a consultant to a cardiologist. Accordingly, the Bynums' reliance on *Domingo* is misplaced.

The evidence presented by the medical experts at trial was sufficient to raise a genuine issue of fact regarding whether Dr. Callan violated the standard of care he owed to his patient when serving as a consultant to a cardiologist. The district court erred in granting the Bynums' motion for a JMOL regarding Dr. Magno's cross-claim against Dr. Callan.

## II.

■ Dr. Magno also contends that the exclusion of Dr. Callan's name from the special verdict form was prejudicial error and compels a reversal of the judgment awarding damages to the Bynums. We review a district court's formulation of civil jury instructions for abuse of discretion. *Monroe v. City of Phoenix,* 248 F.3d 851, 857 (9th Cir.2001). A district court's error is prejudicial unless an appellate court finds that the jury's verdict is "more probably than not untainted by the error." *Haddad v. Lockheed Cal. Corp.,* 720 F.2d 1454, 1459 (9th Cir.1983). Had the district court not erroneously granted a JMOL as to Dr. Magno's cross-claim, Dr. Callan would have remained as a party in this action, and the jury would have been required to determine whether he was liable, in whole or in part, for Mr. Bynum's injuries. Therefore, the omission of Dr. Callan's name from the special verdict form deprived Dr. Magno of her right to a reduction in the amount of damages she owed to the Bynums had the jury found that Dr. Callan was liable for Mr. Bynum's injuries. Because there was sufficient evidence in the record to support a finding that Dr. Callan was negligent, the district court committed prejudicial error in omitting Dr. Callan's name from the special verdict form. Accordingly, the judgment in favor of the Bynums for damages must be reversed.

## III.

Dr. Magno further argues that the district court erred by submitting the amount of the medical expenses billed by Mr. Bynum's healthcare providers to the jury as the reasonable value of their services, instead of the lesser amount negotiated by Medicare and Medi–Cal. Dr. Magno maintains that "[i]f a medical provider is willing to accept a discounted fee for a medical service, it is because the provider recognized the fee as reasonable."

Because we have concluded that we must reverse the judgment awarding damages to the Bynums and the JMOL regarding Dr. Magno's cross-claim against Dr. Callan, we need not determine whether the district court abused its discretion in admitting the amount billed by Mr. Bynum's healthcare providers as reflecting the reasonable value of the services performed. In the event that this case is not disposed of prior to a retrial, the novel question under Hawaii law whether the discounted amount paid to a healthcare provider by Medicaid and Medi–Cal reflects the amount that should be awarded to a plaintiff in a negligence action might

well be a suitable candidate for certification.

## IV.

The district court's grant of judgment as a matter of law with regard to Dr. Magno's cross-claim against Dr. Callan is REVERSED. The final judgment in favor of the Bynums for damages is REVERSED. The case is REMANDED to the district court.

---

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.