******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LISA J. CEFARATTI *v.* JONATHAN S. ARANOW ET AL.
(SC 19443)

Rogers, C. J., and Palmer, Zarella, McDonald, Espinosa, Robinson and
Vertefeuille, Js.

*Argued January 21—officially released June 14, 2016*

*Kelly E. Reardon*, with whom, on the brief, was *Robert I. Reardon, Jr.*, for the appellant (plaintiff).

*S. Peter Sachner*, with whom, on the brief, was *Amy F. Goodusky*, for the appellee (defendant Middlesex Hospital).

*Jennifer L. Cox* and *Jennifer A. Osowiecki* filed a brief for the Connecticut Hospital Association as amicus curiae.

*Alinor C. Sterling*, *Cynthia C. Bott* and *Kathryn Calibey* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

ROGERS, C. J. The primary issue that we must resolve in this certified appeal is whether this court should recognize the doctrine of apparent agency in tort actions, under which a principal may be held vicariously liable for the negligence of a person whom the principal has held out as its agent or employee. The plaintiff, Lisa J. Cefaratti, brought a medical malpractice action against the defendants, Jonathan S. Aranow, Shoreline Surgical Associates, P.C. (Shoreline),[1] and Middlesex Hospital (Middlesex), alleging that Aranow had left a surgical sponge in the plaintiff's abdominal cavity during gastric bypass surgery. She further alleged that Middlesex was both directly liable for its own negligence during the surgery and vicariously liable for Aranow's negligence, because Middlesex had held Aranow out to the public as its agent or employee. Thereafter, Middlesex filed a motion for summary judgment claiming, among other things, that the plaintiff did not have a viable claim of vicarious liability against it because Aranow was not its actual agent or employee and the doctrine of apparent agency is not recognized in tort actions in this state.[2] The trial court agreed with Middlesex and granted its motion for summary judgment on the vicarious liability claim. The plaintiff appealed to the Appellate Court, which affirmed the judgment of the trial court. *Cefaratti* v. *Aranow*, 154 Conn. App. 1, 45, 105 A.3d 265 (2014). We then granted the plaintiff's petition for certification to appeal on the following issue: "Did the Appellate Court properly conclude that the doctrine of apparent authority does not apply to actions sounding in tort?" *Cefaratti* v. *Aranow*, 315 Conn. 919, 107 A.3d 960 (2015). We answer that question in the negative. We also conclude that, because we are adopting a new standard for establishing an apparent agency in tort actions, the case must be remanded to the trial court to provide the plaintiff with an opportunity to establish that there is a genuine issue of material fact as to each element of the doctrine.

The record, which we view in the light most favorable to the plaintiff for purposes of reviewing the trial court's rendering of summary judgment, reveals the following facts and procedural history. At some point prior to December, 2003, the plaintiff decided that she wanted to undergo gastric bypass surgery. The plaintiff knew that Aranow performed this type of surgery because he had performed the procedure on her partner's mother, with very good results. The plaintiff researched the matter and determined that Aranow was considered to be the best gastric bypass surgeon in the state.[3]

Before Aranow would accept the plaintiff as a patient and perform the surgery, the plaintiff was required to attend a seminar that Aranow conducted at Middlesex. In addition, she attended a number of informational sessions at Middlesex that were conducted by Aranow's

staff. The plaintiff received a pamphlet at one of the informational sessions that had been prepared by Middlesex and that stated that "the health care team who will be caring for you has developed an education program that is full of important information." In addition, the pamphlet stated that "[t]he team will go over every aspect of your stay with us. We will discuss what you should do at home before your operation, what to bring with you, and events on the day of surgery."[4] The plaintiff assumed that Aranow was an employee of Middlesex because he had privileges there, and she relied on this belief when she chose to undergo surgery at Middlesex.

On December 8, 2003, Aranow performed gastric bypass surgery on the plaintiff at Middlesex. On August 6, 2009, after being diagnosed with breast cancer by another physician, the plaintiff underwent a computerized tomography (CT) scan of her chest, abdomen and pelvis. The CT scan revealed the presence of foreign material in the plaintiff's abdominal cavity. On September 9, 2009, the plaintiff met with Aranow, who informed her that the object in her abdominal cavity was a surgical sponge.

Thereafter, the plaintiff brought a medical malpractice action alleging, among other things, that Aranow had negligently failed to remove the surgical sponge from her abdominal cavity during the gastric bypass surgery and that Middlesex was vicariously liable for Aranow's negligence because it had held Aranow out as its agent or employee. Middlesex then filed a motion for summary judgment in which it contended that the plaintiff's claim of vicarious liability was barred because Middlesex was not Aranow's employer and the doctrine of apparent authority is not recognized as a basis for tort liability in this state as a matter of law. The plaintiff objected to Middlesex' motion for summary judgment claiming that, contrary to its contention, the doctrine of apparent agency has been recognized in this state. The plaintiff also contended that there was a genuine issue of material fact as to whether Middlesex had held out Aranow as its agent or employee and whether the plaintiff had acted in reliance on her belief that that was the case. Relying on the Appellate Court's decision in *L & V Contractors, LLC* v. *Heritage Warranty Ins. Risk Retention Group, Inc.*, 136 Conn. App. 662, 47 A.3d 887 (2012), the trial court concluded that the doctrine of apparent agency has not been recognized in this state. See id., 670 ("this court has held that the doctrine of apparent authority cannot be used to hold a principal liable for the tortious actions of its alleged agent"). Accordingly, the trial court concluded that the plaintiff's claim of vicarious liability against Middlesex was barred as a matter of law and it rendered summary judgment for Middlesex on that claim. The plaintiff appealed to the Appellate Court, which affirmed the judgment of the trial court. *Cefaratti* v. *Aranow*, supra, 154 Conn. App. 45. This certified appeal followed.[5]

The plaintiff claims on appeal that the Appellate Court improperly concluded that the doctrine of apparent agency has not been recognized in the state as a basis for vicarious liability in actions sounding in tort. Middlesex contends that, to the contrary, the plaintiff has confused the doctrine of apparent authority, which expands the authority of an actual agent, with the doctrine of apparent agency, which creates an agency relationship that would not otherwise exist, and the Appellate Court properly held that the doctrine of apparent agency has been expressly rejected as a basis for tort liability in this state. Middlesex further contends that, even if the doctrine of apparent agency is generally applicable in tort actions, hospitals may not be held vicariously liable for the medical malpractice of their agents or apparent agents. Finally, Middlesex contends that, even if hospitals may be held vicariously liable for medical malpractice, the plaintiff has failed to establish the elements of the doctrine in the present case.

"The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citation omitted; internal quotation marks omitted.) *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 253, 811 A.2d 1266 (2002).

We begin our analysis with a review of our cases involving the doctrines of apparent agency and apparent authority.[6] The first case to come before this court involving the application of the doctrine of apparent authority in a tort action was *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, 127 Conn. 493, 18 A.2d 347 (1941). In that case, the named defendant, Longshore Beach and Country Club, Inc. (country club), employed certain persons to park club members' cars upon their arrival and to retrieve the cars when the members departed. Id., 494. The country club also employed James Plant as a watchman. Id., 495. The parking attendants wore green uniforms, while Plant wore a blue one. Id. A club member, Fred Gior-

chino, was about to leave the club and asked Plant if he could drive. When Plant replied that he could, Giorchino offered Plant a tip to retrieve his car for him. Id. Plant agreed, but never returned with the car. Ultimately, the car was found submerged in nearby waters, with Plant in the driver's seat, drowned. Id. The plaintiff, which had insured Giorchino's car, brought a subrogation action against the country club and its operators contending that they were liable for Plant's negligence because he was "acting either within the scope of [the country club's] implied or [its] apparent authority." Id., 496. The trial court concluded that, to the contrary, Plant was acting as Giorchino's agent and, accordingly, it rendered judgment for the defendants. Id.

On appeal, this court stated that "[a]pparent and ostensible authority is such authority as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe that the agent possesses. This authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency. It is essential to the application of the above general rule that two important facts be clearly established: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent."[7] (Internal quotation marks omitted.) Id., 496–97.

After setting forth these legal principles, this court concluded that, under the specific facts of the case, "Plant was not acting . . . even in the apparent or ostensible scope of his authority. The plaintiff failed to establish that the defendants held Plant out to the [country club] members as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; or that Giorchino acting in good faith had reason to believe and did believe that Plant possessed the necessary authority. The defendants' liability is determined by

what authority Giorchino, exercising reasonable care and prudence, was justified in believing that the defendants had by their acts under the circumstances conferred upon Plant. Giorchino's question whether Plant could drive a car, and his bargain with him are among the significant facts." Id., 497–98. Accordingly, this court concluded that the defendants were not liable for Plant's negligence. Id., 498.

Despite the clear language of *Fireman's Fund Indemnity Co.*, in which this court recognized the doctrine of apparent authority but rejected the plaintiff's claim because it had failed to establish the factual elements of that claim, the Appellate Court has subsequently suggested in a series of cases that that doctrine and the related doctrine of apparent agency have been rejected in this state *as a matter of law.*[8] It was not until its decision in the present case that the Appellate Court finally recognized that this conflict exists.[9] We agree that *L & V Contractors, LLC* v. *Heritage Warranty Ins. Risk Retention Group, Inc.*, supra, 136 Conn. App. 662, *Davies* v. *General Tours, Inc.*, 63 Conn. App. 17, 774 A.2d 1063, cert. granted, 256 Conn. 926, 776 A.2d 1143 (2001) (appeal withdrawn October 18, 2001), and *Mullen* v. *Horton*, 46 Conn. App. 759, 700 A.2d 1377 (1987), cannot be reconciled with *Fireman's Fund Indemnity Co.*, and must, therefore, be overruled. Although this court in *Fireman's Fund Indemnity Co.* did not expressly analyze the issue of whether the doctrine of apparent authority should apply, it clearly believed that the doctrine did apply in tort cases. Nothing in the language of this court's decision suggests that this court had merely assumed, without deciding, that the defendants could be held vicariously liable for the tortfeasor's negligence. Moreover, this court has characterized its decision in *Fireman's Fund Indemnity Co.* as "*applying*" the doctrine of apparent authority in a tort case. (Emphasis added.) *Hanson* v. *Transportation General, Inc.*, 245 Conn. 613, 617 n.5, 716 A.2d 857 (1998).

Indeed, in the present case, Middlesex does not dispute that *Fireman's Fund Indemnity Co.* stands for the proposition that the doctrine of apparent *authority* may be applied in tort cases in this state. Rather, it contends that there is a distinction between the doctrine of apparent authority and the doctrine of apparent agency, and that *Fireman's Fund Indemnity Co.* recognized only the former. We agree with Middlesex that *Fireman's Fund Indemnity Co.* involved the doctrine of apparent authority, not the doctrine of apparent agency, and that there is a useful semantic distinction between the two doctrines. Specifically, the doctrine of apparent authority expands the authority of an actual agent, while the doctrine of apparent agency creates an agency relationship that would not otherwise exist. See footnote 6 of this opinion. We do not agree, however, that this distinction between the two doctrines

justifies recognizing one, but not the other. As in many other jurisdictions,[10] it has been the rule in this state for courts to use the terms apparent agency and apparent authority interchangeably. For example, in *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, supra, 127 Conn. 496–97, a case in which an actual employment relationship existed between the defendants and the tortfeasor, this court first referred to the law governing "apparent authority" and then immediately noted that apparent authority may be found when the principal "causes or allows third persons to act on an apparent *agency*." (Emphasis added.) In *Davies* v. *General Tours, Inc.*, 63 Conn. App. 17, 31, 774 A.2d 1063, cert. granted, 256 Conn. 926, 776 A.2d 1143 (2001) (appeal withdrawn October 18, 2001), a case in which no actual agency relationship was established between the defendant and the tortfeasor, the Appellate Court referred to the "doctrine of agency by estoppel, or apparent *authority* . . . ." (Emphasis added; internal quotation marks omitted.) Similarly, in *L & V Contractors, LLC* v. *Heritage Warranty Ins. Risk Retention Group, Inc.*, supra, 136 Conn. App. 669, the Appellate Court concluded that there was no actual agency relationship, but then referred to the plaintiff's claim under the doctrine of "apparent *authority*." (Emphasis added.) See also *City Bank of New Haven* v. *Throp*, 78 Conn. 211, 217, 61 A. 428 (1905) (in contract case, "[w]hether the subject is treated as an *agency* by estoppel or as one of apparent or ostensible *authority*, the principle is the same, and the law is well settled" [emphasis added]).[11] Thus, the cases assume that the same policy considerations underlie both doctrines.

Moreover, the Restatement (Third) of Agency now sets forth a single doctrine that expressly applies both to actual agents and to apparent agents. 1 Restatement (Third), Agency § 2.03 (2006). That Restatement (Third) provides: "Apparent authority is the power held by an agent *or other actor* to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." (Emphasis added.) Id.; see also id., comment (a), p. 113 ("[t]he definition in this section does not presuppose the present or prior existence of an agency relationship"); id., comment (b), p. 114 ("The doctrine stated in this section applies to agents *and other actors* who purport to act as agents on a principal's behalf. The doctrine also applies to the 'apparent authority' of actors who are agents but whose actions exceed their actual authority. Many judicial opinions use the terms 'apparent agency' and 'apparent authority' interchangeably." [Emphasis added.]); 2 Restatement (Third), Agency § 7.08 (2006) (providing that principal is vicariously liable for tort committed by person with apparent authority as defined by § 2.03).

Indeed, Middlesex has not identified a single case

from any other jurisdiction in which the court has recognized the applicability of the doctrine of apparent authority in tort actions, but has refused to recognize the doctrine of apparent agency, and we decline to follow such a course here. As this court stated more than 100 years ago in the context of a contract case, regardless of whether there is an actual agency relationship between the defendant and the direct tortfeasor or only an apparent agency, if the defendant "has justified the belief of a third party that the person assuming to be his agent was authorized to do what was done, it is no answer for [the defendant] to say that no authority had been given, or that it did not reach so far, and that the third party had acted upon a mistaken conclusion. . . . If a loss is to be borne, the author of the error must bear it." (Internal quotation marks omitted.) *City Bank of New Haven* v. *Throp*, supra, 78 Conn. 217; see also *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 720, 735 A.2d 306 (1999) ("The rules of vicarious liability . . . respond to a specific need in the law of torts: how to fully compensate an injury caused by the act of a single tortfeasor. Upon a showing of agency, vicarious liability increases the likelihood that an injury will be compensated, by providing two funds from which a plaintiff may recover. If the ultimately responsible agent is unavailable or lacks the ability to pay, the innocent victim has recourse against the principal." [Emphasis omitted; internal quotation marks omitted.]); *Mendillo* v. *Board of Education*, 246 Conn. 456, 482, 717 A.2d 1177 (1998) ("the fundamental policy purposes of the tort compensation system [are] compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct"), overruled on other grounds by *Campos* v. *Coleman*, 319 Conn. 36, 57, 123 A.3d 854 (2015). "Whether the subject is treated as an agency by estoppel or as one of apparent or ostensible authority, the principle is the same, and the law is well settled." *City Bank of New Haven* v. *Throp*, supra, 217; see also *Baptist Memorial Hospital System* v. *Sampson*, 969 S.W.2d 945, 948 n.2 (Tex. 1998) ("[r]egardless of the term used, the purpose of the [various doctrines under which a principal who has held out a person as an agent may be held vicariously liable for the person's negligence] is to prevent injustice and protect those who have been misled"). Accordingly, we conclude that both the doctrine of apparent authority and the doctrine of apparent agency may be applied in tort actions.

Middlesex claims, however, that a principal should not be held liable for the negligence of a person who was not an actual agent under the doctrine of apparent agency because "[a] necessary element of demonstrating that there is a principal and agent relationship is to show that the principal is in control." *L & V Contractors, LLC* v. *Heritage Warranty Ins. Risk Retention Group, Inc.*, supra, 136 Conn. App. 668; see also *Tianti* v. *Wil-*

*liam Raveis Real Estate Inc.*, 231 Conn. 690, 696–97, 651 A.2d 1286 (1995) ("[i]t has long been established that [t]he fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control the means and methods of work" [internal quotation marks omitted]). Middlesex contends that it would be unfair to hold an entity responsible for conduct that it had no ability to prevent. Middlesex does not dispute, however, that a principal may be held liable under the doctrine of apparent authority for the acts of an *actual agent who is acting beyond his or her authority*, i.e., who is not acting under the control of the principal, when the principal's conduct has led the plaintiff reasonably to believe that the agent was acting within his or her authority and the plaintiff has detrimentally relied on that belief. We see no reason why a different rule should apply when the principal lacks control over an apparent agent. See D. Janulis & A. Hornstein, "Damned If You Do, Damned If You Don't: Hospitals' Liability For Physicians' Malpractice," 64 Neb. L. Rev. 689, 702 (1985) (requiring plaintiff to prove that principal controlled apparent agent in order to establish apparent agency blurs theories of respondeat superior and apparent agency).

Middlesex also contends that, even if the doctrine of apparent agency may be applied in tort actions, "[a] hospital cannot practice medicine and therefore cannot be held directly liable for any acts or omissions that constitute medical functions." *Reed* v. *Granbury Hospital Corp.*, 117 S.W.3d 404, 415 (Tex. App. 2003); id. (when decision that resulted in plaintiff's injury "was one that only a physician could have made," hospital employer could not be held liable for it); see also *Browning* v. *Burt*, 66 Ohio St. 3d 544, 556, 613 N.E.2d 993 (1993) ("[a] hospital does not practice medicine and is incapable of committing malpractice"). We again disagree. First, it appears that, to the extent that *Reed* stands for the proposition that a hospital cannot be held liable for the medical malpractice of its agents and employees, that case is inconsistent with the decision of the Texas Supreme Court in *Baptist Memorial Hospital System* v. *Sampson*, supra, 969 S.W.2d 948; see id. ("[h]ospitals are subject to the principles of agency law which apply to others . . . [therefore] a hospital may be vicariously liable for the medical malpractice of independent contractor physicians when plaintiffs can establish the elements of ostensible agency" [citations omitted; internal quotation marks omitted]); and *Browning* held only that hospitals cannot commit medical malpractice directly, not that they cannot be held vicariously liable for the medical malpractice of their agents, employees and apparent agents. See *Comer* v. *Risko*, 106 Ohio St. 3d 185, 187, 833 N.E.2d 712 (2005) (hospital may be held liable for torts of employees under doctrine of respondeat superior and for torts of apparent agents

under doctrine of agency by estoppel).

Second, regardless of the rule in Texas and Ohio, it has never been the rule in this state that hospitals cannot be held vicariously liable for the medical malpractice of their agents and employees.[12] To the contrary, this court, the Appellate Court and the Superior Courts have consistently assumed that the doctrine of respondeat superior may be applied to hold hospitals vicariously liable for the medical malpractice of their agents and employees.[13] Because a hospital may be held vicariously liable for the medical malpractice of its agents and employees under the doctrine of respondeat superior, it may also be held vicariously liable under the doctrine of apparent agency.[14]

We next address Middlesex' claim that, even if hospitals may be held liable for the negligence of their agents and employees under the doctrine of apparent agency, the plaintiff in the present case cannot prevail on her claim because she has not established a genuine issue of material fact as to each element of the doctrine. Specifically, Middlesex contends that the plaintiff is required to, and cannot, prove that she detrimentally relied on Middlesex' representations that Aranow was its agent or employee. Cf. *Menzie* v. *Windham Community Memorial Hospital*, 774 F. Supp. 91, 97 (D. Conn. 1991) (observing that application of doctrine of apparent authority to tort action is "rife with speculation, suggesting the need for a more definitive reading of Connecticut laws," but concluding that plaintiff failed to demonstrate genuine issue of material fact as to whether doctrine applied because he presented no evidence of reliance), vacated on other grounds, United States Court of Appeals, Docket No. 92-7350 (2d Cir. February 8, 1993). The plaintiff contends that, to the contrary, our cases have consistently held that all that is required to establish apparent agency[15] is proof: "(1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act has having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe, and did believe, that the agent possessed the necessary authority." (Internal quotation marks omitted.) *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, supra, 127 Conn. 497; see also *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 120, 140–41, 464 A.2d 6 (1983) ("Apparent authority . . . must be determined by the acts of the principal rather than by the acts of the agent. . . . Furthermore, the party seeking to impose liability upon the principal must demonstrate that it acted in good faith based upon the actions or inadvertences of the principal." [Citations omitted; internal quotation marks omitted.]).[16] At oral argument before this court, the plaintiff further contended that there is a difference between the doctrine of apparent agency, on which she

relies, and the doctrine of agency by estoppel, and that only agency by estoppel requires proof of detrimental reliance.[17] Thus, the plaintiff contends, all that she is required to prove to establish apparent agency is that Middlesex held out Aranow as its employee or agent and that she actually, reasonably, and in good faith believed that to be the case.

Although we agree with the plaintiff that our cases involving the doctrine of apparent agency have not required a showing of detrimental reliance, we note that all of the cases except *Fireman's Fund Indemnity Co.* involved contract actions, and *Fireman's Fund Indemnity Co.* adopted its standard from cases involving contract actions. It may be that proof of detrimental reliance has not been required to establish apparent agency in contract actions because such reliance is generally implicit in the conduct at issue.[18] No such presumption of reliance arises in tort actions pursuant to the doctrine of apparent agency. See *Fernander* v. *Thigpen*, 278 S.C. 140, 148, 293 S.E.2d 424 (1982) ("[i]n the ordinary personal injury case the injured person does not rely upon authority of any kind in getting hurt"); D. Janulis & A. Hornstein, supra, 64 Neb. L. Rev. 697 ("the required change of position suggests that the estoppel doctrine will generally be inapplicable in the typical personal injury case"), citing *Stewart* v. *Midani*, 525 F. Supp. 843, 851 (N.D. Ga. 1981); *Stewart* v. *Midani*, supra, 851 ("it cannot reasonably be contended that a motorist would be more likely to wish to collide with a truck bearing the insignia of [Texaco] than with one bearing any other insignia").[19] Accordingly, we believe that it is appropriate for us to consider as a matter of first impression whether the *Fireman's Fund Indemnity Co.* standard, which derives from contract actions, should apply in tort actions or, instead, proof of detrimental reliance is a required element of the doctrine of apparent agency in such cases.

Unfortunately, as our inconsistent use of terminology in these contract cases suggests, this area of the law is rife with confusion. As one commentator has observed, "[a]lthough the doctrine of apparent agency [as applied in tort actions] is steeped in principles of estoppel, apparent agency and estoppel to deny agency are not theoretically identical. In practice, however, commentators and courts often use these terms as if they were interchangeable, causing confusion and possible misapplication of the law." (Footnotes omitted; internal quotation marks omitted.) D. Janulis & A. Hornstein, supra, 64 Neb. L. Rev. 696. Indeed, having reviewed the relevant case law; see footnote 26 of this opinion; we are compelled to agree with these commentators that "it is difficult at times to discern whether a court is basing its finding of liability on estoppel, apparent agency, or on respondeat superior. It may be nigh impossible to decide which theory of agency a court is using to impose liability even when it discusses its rationale at length."

D. Janulis & A. Hornstein, supra, 697.

The relevant portions of the various Restatements do not clarify the issue. See 1 Restatement (Second), Agency § 8 (1958);[20] id., § 8B;[21] id., § 267;[22] 1 Restatement (Third), supra, § 2.03;[23] 2 Restatement (Third), supra, § 7.08;[24] 2 Restatement (Second), Torts § 429 (1965).[25] Indeed, the conflicting terminology and standards set forth in these authorities, and the lack of clarity as to whether the provisions that are not tort specific were intended to or logically may be applied in tort actions, appear to be the source of much of the confusion in the cases applying the doctrine of apparent agency in that context. See footnote 26 of this opinion.

Nevertheless, although their doctrinal underpinnings are not entirely clear, we ultimately are persuaded by the cases that have concluded that, under certain circumstances, proof of detrimental reliance is not required to establish an apparent agency in tort actions. Specifically, many courts, especially in cases seeking to hold a hospital vicariously liable for a physician's malpractice, have concluded that an apparent agency is established when the plaintiff proves that he or she looked to the principal to provide services and the principal, not the plaintiff, selected the specific person who actually provided the services and caused the plaintiff's injury.[26] These courts have not required the plaintiff to establish detrimental reliance on the principal's representations that the tortfeasor was the principal's agent or employee, i.e., that the plaintiff would not have accepted the tortfeasor's services if the plaintiff had known that the tortfeasor was not the principal's agent. Indeed, many cases have held that the plaintiff is not even required to present affirmative evidence that he or she actually and reasonably believed that the tortfeasor was the principal's agent or employee. Rather, the cases appear to hold that such belief may be presumed from the fact that the plaintiff chose the principal and the principal chose the specific person who provided the services,[27] and the fact the principal was the actual cause of the relationship between the plaintiff and the tortfeasor that resulted in injury is sufficient justification to apply the doctrine. See, e.g., *Sword* v. *NKC Hospitals, Inc.*, 714 N.E.2d 142, 152 (Ind. 1999) ("if the hospital has failed to give meaningful notice [that the provider of care was an independent contractor], if the patient has no special knowledge regarding the arrangement the hospital has made with its physicians, and if there is no reason that the patient should have known of these employment relationships, then reliance is presumed").

We find these cases persuasive for a number of reasons. First, cases in which the plaintiff accepted a principal's offer of services and the principal then chose the specific person who would provide the services have contractual overtones, and detrimental reliance is

implicit in a contractual relationship. See 1 Restatement (Second), Torts, supra, § 8, comment (d), p. 33 ("it is not irrational to hold that merely entering into a contract is a change of position which would enable the third person to bring an action against the principal" for negligence of independent contractor employed by principal). Second, when an entity has held itself out as providing certain services to the public—and, indeed, may have made great efforts to persuade members of the public to avail themselves of those services, and benefited from doing so[28]—and has selected the specific individual who will provide those services to particular members of the public, we do not believe that it is unfair to hold that entity liable for the individual's negligence. Third, and relatedly, holding principals liable under these circumstances is consistent with the fundamental purposes of the tort compensation system of deterring wrongful conduct and shifting the blame to the party who is in the best position to prevent the injury.[29] See *Mendillo* v. *Board of Education*, supra, 246 Conn. 482; see also *Kashishian* v. *Port*, 167 Wis. 2d 24, 45, 481 N.W.2d 277 (1992) (The court determined that holding a hospital liable under these circumstances "provides a stronger incentive to the hospital to monitor and control physicians. This will result in higher quality medical care since the hospital is in the best position to enforce strict adherence to policies regarding patient safety . . . .").

We further conclude, however, that, when the *plaintiff* selected the specific person who provided the services and caused the injury on the basis of the plaintiff's knowledge of the person's skills and reputation, the plaintiff must demonstrate an actual and reasonable belief in the principal's representations that the person was its agent, and also detrimental reliance on those representations to establish apparent agency. See *Orlando Executive Park, Inc.* v. *Robbins*, 433 So. 2d 491, 494 (Fla. 1983) (elements of apparent agency in tort action are: "[1] a representation by the principal; [2] reliance on that representation by a third person; and [3] a change of position by the third person in reliance upon such representation to his detriment" [internal quotation marks omitted]); *Deal* v. *North Carolina State University*, 114 N.C. App. 643, 647, 442 S.E.2d 360 (1994) ("[t]he common thread in the [tort] cases upholding the assertion of apparent agency is the plaintiff's desire to deal with the estopped party for some particular reason and the plaintiff acting because he believed he was dealing with the estopped party's agent" [internal quotation marks omitted]); *Watkins* v. *Mobil Oil Corp.*, 291 S.C. 62, 67, 352 S.E.2d 284 (App. 1986) (To prove apparent agency in a tort action, "it is not enough simply to prove that the purported principal by either affirmative conduct or conscious and voluntary inaction has represented another to be his agent or servant. A party must also prove reliance upon the

representation and a change of position to his detriment in reliance on the representation."); 1 Restatement (Second), Agency, supra, § 267 ("[o]ne who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such"). It would make little sense to hold a principal vicariously liable for the negligence of a person who was not an agent or an employee of the principal when the plaintiff would have dealt with the apparent agent regardless of the principal's representations.

Accordingly, we adopt the following alternative standards for establishing apparent agency in tort cases. First, the plaintiff may establish apparent agency by proving that: (1) the principal held itself out as providing certain services; (2) the plaintiff selected the principal on the basis of its representations; and (3) the plaintiff relied on the principal to select the specific person who performed the services that resulted in the harm complained of by the plaintiff. Second, the plaintiff may establish apparent agency in a tort action by proving the traditional elements of the doctrine of apparent agency, as set forth in our cases involving contract claims, plus detrimental reliance. Specifically, the plaintiff may prevail by establishing that: (1) the principal held the apparent agent or employee out to the public as possessing the authority to engage in the conduct at issue, or knowingly permitted the apparent agent or employee to act as having such authority; (2) the plaintiff knew of these acts by the principal, and actually and reasonably believed that the agent or employee or apparent agent or employee possessed the necessary authority; see *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, supra, 127 Conn. 496–97; and (3) the plaintiff detrimentally relied on the principal's acts, i.e., the plaintiff would not have dealt with the tortfeasor if the plaintiff had known that the tortfeasor was not the principal's agent or employee. We emphasize that this standard is narrow, and we anticipate that it will be only in the rare tort action that the plaintiff will be able to establish the elements of apparent agency by proving detrimental reliance. See *Fernander* v. *Thigpen*, supra, 278 S.C. 148 ("[i]n the ordinary personal injury case the injured person does not rely upon authority of any kind in getting hurt"); D. Janulis & A. Hornstein, supra, 64 Neb. L. Rev. 697 ("the required change of position suggests that the estoppel doctrine will generally be inapplicable in the typical personal injury case"), citing *Stewart* v. *Midani*, supra, 525 F. Supp. 851; *Stewart* v. *Midani*, supra, 851 ("it cannot reasonably be contended that a motorist would be more likely to wish to collide with a truck bearing the insignia of [Texaco] than with one bearing

any other insignia").

There is no real dispute that the plaintiff in the present case cannot meet the first standard, and Middlesex claims that the plaintiff has not established detrimental reliance on its representations. Because we have adopted the detrimental reliance standard for the first time in this opinion, however, we believe that fairness requires us to remand the case to the trial court so that the plaintiff may have an opportunity to present evidence that she detrimentally relied on her belief that Aranow was Middlesex' agent or employee. We emphasize that, to meet this burden, the plaintiff must set forth facts and evidence capable of raising a reasonable inference that she would not have allowed Aranow to perform the surgery if she had known that he was not Middlesex' agent or employee.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for further proceedings in accordance with this opinion.

In this opinion PALMER, McDONALD and VERTE-FEUILLE, Js., concurred.

[1] The plaintiff alleged that Shoreline was Aranow's employer and that Shoreline was directly liable to her for its own negligence. Shoreline has admitted that Aranow is its employee and the claim against Shoreline is not at issue in this appeal.

[2] Middlesex also claimed in its motion for summary judgment that both the direct and the derivative claims against it were barred by the statute of limitations. Aranow and Shoreline subsequently filed a joint motion for summary judgment raising the same claim. The trial court concluded that the direct claims against Aranow and Middlesex were barred by the statute of limitations and, therefore, the derivative claims against Middlesex and Shoreline were also barred. The plaintiff appealed from the trial court's ruling with respect to her claims against Aranow and Shoreline and the claim of vicarious liability against Middlesex to the Appellate Court, which reversed the judgment of the trial court on the ground that there was a genuine issue of material fact as to whether the statute of limitations had been tolled by the continuing course of treatment doctrine. *Cefaratti* v. *Aranow*, 154 Conn. App. 1, 22, 105 A.3d 265 (2014). We then granted Aranow and Shoreline's petition for certification to appeal from that ruling, limited to the following issue: "Did the Appellate Court properly apply the 'continuing course of treatment' doctrine in determining what constitutes an 'identifiable medical condition' under that doctrine?" *Cefaratti* v. *Aranow*, 315 Conn. 919, 919–20, 107 A.3d 960 (2015). In the companion case of *Cefaratti* v. *Aranow*, 321 Conn.   ,   A.3d   (2016), released on the same date as this opinion, we answer that question in the affirmative.

[3] The following exchange took place between Aranow's attorney and the plaintiff at the plaintiff's deposition:

"Q. Okay, so can you tell me how it came about that you made a decision that you wanted to have gastric bypass surgery? Did some doctor recommend that to you?

"A. It was around the time that [the plaintiff's treating physician] said that I was borderline diabetic and I started taking stock of my health very seriously. My partner's mother had had bariatric surgery and she had a really good result and that's when I decided that that's what I wanted to do.

"Q. And do you know who did your partner's mother's surgery?

"A. Dr. Aranow.

"Q. So is that where you got his name from?

"A. That's where I got his name and then I did my own research and I found that he was the best in the state at that time.

"Q. And so at that point you made a decision, I think I want to do this procedure?

"A. Yes.

"Q. And when you did your research, were you just researching doctors who did the procedure or were you actually researching the procedure itself?

"A. Both."

[4] In support of her opposition to Middlesex' motion for summary judgment, the plaintiff provided the trial court with the affidavit of Sarah A. McNeely, an associate at the law firm that represented the plaintiff, in which McNeely stated that she had visited Middlesex' website and found information that would support a reasonable belief that Aranow was employed by Middlesex. McNeely printed out the materials and attached them to her affidavit. The plaintiff has pointed to no evidence in the record, however, that would support a finding that the plaintiff saw these materials before undergoing the surgery.

[5] After we granted the plaintiff's petition for certification to appeal, we granted permission to the Connecticut Trial Lawyers Association to file an amicus curiae brief in support of the plaintiff's position and to the Connecticut Hospital Association to file an amicus curiae brief in support of Middlesex' position.

[6] The doctrine of apparent authority expands the authority of an actual agent, while the doctrine of apparent agency creates an agency relationship that would not otherwise exist. See *Miller* v. *McDonald's Corp.*, 150 Ore. App. 274, 282 n.4, 945 P.2d 1107 (1997) ("Apparent agency is a distinct concept from apparent authority. Apparent agency creates an agency relationship that does not otherwise exist, while apparent authority expands the authority of an actual agent."); see also *Crinkley* v. *Holiday Inns, Inc.*, 844 F.2d 156, 166 (4th Cir. 1988) ("apparent authority presupposes actual agency, and only operates to extend the scope of an actual agent's authority," while, under doctrine of apparent agency, "no actual agency exists, [but] a party may be held to be the agent of another on the basis that he has been held out by the other to be so in a way that reasonably induces reliance on the appearances"); but see *Fletcher* v. *South Peninsula Hospital*, 71 P.3d 833, 840–41 (Alaska 2003) (concluding that apparent agency is based on § 429 of Restatement [Second] of Torts, while apparent authority is based on § 8 of Restatement [Second] of Agency, and, "[e]xcept for apparent authority's more explicit focus on the principal's conduct, apparent authority and apparent agency are not markedly different theories of liability; in fact, other courts often use them interchangeably"); *Daly* v. *Aspen Center for Women's Health, Inc.*, 134 P.3d 450, 454 (Colo. App. 2005) (when plaintiff "seeks to establish vicarious liability for a physical tort, she is asserting apparent agency, not apparent authority"). It is an understatement to say that courts have been inconsistent in their use of the terminology relating to the doctrines of apparent agency and apparent authority.

[7] The court in *Fireman's Fund Indemnity Co.* derived these principles from two contract cases involving the doctrine of apparent authority. *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, supra, 127 Conn. 497, citing *Zazzaro* v. *Universal Motors, Inc.*, 124 Conn. 105, 111, 197 A. 884 (1938), and *Quint* v. *O'Connell*, 89 Conn. 353, 357, 94 A. 288 (1915).

[8] See *L & V Contractors, LLC* v. *Heritage Warranty Ins. Risk Retention Group, Inc.*, supra, 136 Conn. App. 670 ("the doctrine of apparent authority cannot be used to hold a principal liable for the tortious actions of its alleged agent"); *Davies* v. *General Tours, Inc.*, 63 Conn. App. 17, 31, 774 A.2d 1063 ("the doctrine of agency by estoppel, or apparent authority . . . is not a viable ground on which to premise liability against a defendant sued for the torts of an alleged agent" [internal quotation marks omitted]), cert. granted, 256 Conn. 926, 776 A.2d 1143 (2001) (appeal withdrawn October 18, 2001); *Mullen* v. *Horton*, 46 Conn. App. 759, 771–72, 700 A.2d 1377 (1987) (trial court properly had held that defendants in tort action were entitled to judgment as matter of law on claim pursuant to doctrine of apparent authority because doctrine had never been "used in such a manner" in this state).

[9] Specifically, the Appellate Court concluded in the present case that *Mullen* v. *Horton*, 46 Conn. App. 759, 771, 700 A.2d 1377 (1987), and *Davies* v. *General Tours, Inc.*, 63 Conn. App. 17, 31, 774 A.2d 1063, cert. granted, 256 Conn. 926, 776 A.2d 1143 (2001) (appeal withdrawn October 18, 2001), must be interpreted as having "held that *the facts of those cases* did not justify the imposition of vicarious liability" under the doctrine of apparent authority, thereby implying that this court has recognized the doctrine. (Emphasis added.) *Cefaratti* v. *Aranow*, supra, 154 Conn. App. 40–41; see also id., 45 (affirming *L & V Contractors, LLC*, on sole ground that panel of Appellate Court cannot overrule precedent established by previous panel).

Numerous Superior Court decisions have applied *Fireman's Fund Indem-*

*nity Co.* in tort actions. See *Beamon* v. *Petersen*, Superior Court, judicial district of New Haven, Docket No. CV-10-6010085-S (April 9, 2014) (57 Conn. L. Rptr. 920) ("it is illogical to conclude that *Fireman's Fund* [*Indemnity Co.*] cannot be invoked for the proposition that the doctrine of apparent authority applies to tort liability" [internal quotation marks omitted]); id., 923 (citing Superior Court cases that have concluded that *L & V Contractors, LLC*, is not binding because it conflicts with *Fireman's Fund Indemnity Co.*); but see *Weiss* v. *Surgical Associates, P.C.*, Superior Court, judicial district of Fairfield, Docket No. CV-11-6022546-S (April 30, 2015) (following *L & V Contractors, LLC*, and citing other Superior Court cases that have done so).

[10] See *Baptist Memorial Hospital System* v. *Sampson*, 969 S.W.2d 945, 947 n.2 (Tex. 1998) ("Many courts use the terms ostensible agency, apparent agency, apparent authority, and agency by estoppel interchangeably. As a practical matter, there is no distinction among them. . . . Regardless of the term used, the purpose of the doctrine is to prevent injustice and protect those who have been misled." [Citations omitted.]); id. (citing cases).

[11] We further note that, in *Mullen* v. *Horton*, 46 Conn. App. 759, 771, 700 A.2d 1377 (1987), the plaintiff sought to hold the defendants liable for the acts of an *employee* under the doctrine of "apparent authority," thus using the correct terminology. As we have indicated, the Appellate Court concluded that "the doctrine of apparent authority has never been used in such a manner." Id., 772. This conclusion could not have been based on the distinction between apparent authority and apparent agency, however, because, under *Fireman's Fund Indemnity Co.*, the doctrine of apparent authority may be applied to hold the tortfeasor's employer vicariously liable.

[12] Although hospitals were once exempt from claims of vicarious liability for the medical malpractice of their agents and employees under the doctrine of charitable immunity; see *McDermott* v. *St. Mary's Hospital Corp.*, 144 Conn. 417, 422, 133 A.2d 608 (1957); that doctrine has been legislatively abolished. See General Statutes § 52-557d.

[13] See *Sherwood* v. *Danbury Hospital*, 278 Conn. 163, 184 n.19, 896 A.2d 777 (2006) (hospital may be held vicariously liable when employee physician fails to fulfill duty of care to patient); *Mather* v. *Griffin Hospital*, 207 Conn. 125, 136, 540 A.2d 666 (1988) ("any negligence the jury ascribed to [a nurse employed by the defendant hospital] would have been attributable to the hospital under the doctrine of respondeat superior"); see also *Wilkins* v. *Connecticut Childbirth & Women's Center*, 314 Conn. 709, 104 A.3d 671 (2014) ("the plaintiff filed this medical malpractice action [against the corporate defendants] based on alleged negligence on the part of employees or agents of the defendants during the . . . delivery of [the plaintiff's] child"); *Morgan* v. *Hartford Hospital*, 301 Conn. 388, 392, 21 A.3d 451 (2011) (corporate defendant was sued pursuant to doctrine of respondeat superior); *Rivera* v. *St. Francis Hospital & Medical Center*, 55 Conn. App. 460, 464, 738 A.2d 1151 (1999) (hospital was sued pursuant to doctrine of respondeat superior); *Shenefield* v. *Greenwich Hospital Assn.*, 10 Conn. App. 239, 249, 522 A.2d 829 (1987) ("[t]he failure of the doctor, while acting as an agent of the hospital, to fulfill his duty supported the jury's finding of negligence on the part of both the doctor and the hospital"); see footnote 9 of this opinion (citing Superior Court cases that have held hospitals vicariously liable for medical practice).

[14] The amicus Connecticut Hospital Association contends that holding hospitals vicariously liable for medical malpractice under the doctrine of apparent agency would "transmute hospitals into excess insurers of those physicians who are neither employees nor actual agents of the hospital." To the extent that the amicus is claiming that it is simply unfair to hold an entity vicariously liable for the negligence of a nonagent, we reject this argument for the reasons set forth in this opinion. Moreover, although the issue is not before us, we note that a principal that is held vicariously liable for another's negligence under the doctrine of apparent agency may be able to seek indemnification from the tortfeasor, an option that is not available to an insurer. See *Kyrtatas* v. *Stop & Shop, Inc.*, 205 Conn. 694, 698, 535 A.2d 357 (1988) ("[a] plaintiff in an action for indemnification not based on statute or express contract . . . can recover indemnity from [the active tortfeasor] . . . by establishing four separate elements: [1] that the . . . tortfeasor was negligent; [2] that his negligence, rather than [the negligence of the party seeking indemnification], was the direct, immediate cause of the accident and injuries; [3] that [the tortfeasor] was in control of the situation to the exclusion of the [party seeking indemnification]; and [4] that the [party seeking indemnification] did not know of such negligence,

had no reason to anticipate it, and could reasonably rely on the . . . tortfeasor not to be negligent"). The amicus further contends that liability insurers will be unable "to rate, review, and collect premiums" for this risk. The amicus has not explained, however, why liability insurers will lack this ability. Insurance companies regularly insure large and immensely complex enterprises. Indeed, the doctrine of apparent authority has been widely adopted; see footnote 26 of this opinion; and the amicus has pointed to no evidence of an insurance crisis in the states where it is recognized.

[15] Many of these cases use the phrases "apparent authority" and "apparent agency" interchangeably. Because, as we have explained, the underlying rationale for both doctrines is the same, and because the present case involves a claim of apparent agency, we use that term.

[16] See also *Cohen* v. *Holloways', Inc.*, 158 Conn. 395, 407, 260 A.2d 573 (1969) ("the acts of the principal must be such that [1] the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and [2] in consequence thereof the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority" [internal quotation marks omitted]); *Nowak* v. *Capitol Motors, Inc.*, 158 Conn. 65, 69, 255 A.2d 845 (1969) (same); *Lewis* v. *Michigan Millers Mutual Ins. Co.*, 154 Conn. 660, 665–66, 228 A.2d 803 (1967) ("To fix the principal's liability for the agent's act, it must be shown either that the principal, by his own acts, causes the mistaken belief that the agent had the requisite authority or that the principal knowingly permitted the agent to engender that belief. . . . Also, of course, the third party must have acted in good faith on the false appearance created by the principal." [Citation omitted.]); *Zazzaro* v. *Universal Motors, Inc.*, 124 Conn. 105, 110–11, 197 A. 884 (1938) ("This claim apparently overlooks the elements essential to apparent authority . . . . One is that the principal must have held the agent out to the public as possessing the requisite authority, and the other that the one dealing with the agent and knowing of the facts, must have believed in good faith and upon reasonable grounds that the agent had the necessary authority.").

[17] See 1 Restatement (Third), supra, § 2.03, comment (b), p. 114 ("'[o]stensible authority,' as the term is defined in some jurisdictions, is not identical in meaning to 'apparent authority' when it requires elements requisite to estoppel"); id., § 2.05, p. 145 ("[a] person who has not made a manifestation that an actor has authority as an agent . . . is subject to liability to a third party who justifiably is induced to make a detrimental change in position"); see also D. Janulis & A. Hornstein, supra, 64 Neb. L. Rev. 701 ("confusion abounds . . . in the areas of apparent agency versus estoppel to deny agency").

[18] For example, if A agrees to pay B $1000 for a car, and A gives the $1000 to C, reasonably believing B's representations that C was his agent, it reasonably may be presumed that A would not have given the money to C but for B's representations.

[19] We also note that some of the language in the cases on which the plaintiff relies is equivocal. For example, in *Beckenstein* v. *Potter & Carrier, Inc.*, supra, 191 Conn. 140–41, this court stated that the party seeking to impose liability must prove that "it *acted in good faith* based upon the actions . . . of the principal"; (emphasis added); not simply that the party must have *believed* the principal's manifestations of agency in good faith. See also *Lewis* v. *Michigan Millers Mutual Ins. Co.*, 154 Conn. 660, 666, 228 A.2d 803 (1967) ("the third party must have *acted in good faith* on the false appearance created by the principal" [emphasis added]). In addition, although this court in *Nowak* v. *Capitol Motors, Inc.*, 158 Conn. 65, 69, 255 A.2d 845 (1969), set forth the test for apparent agency that this court adopted in *Fireman's Fund Indemnity Co.*, this court also stated that "the plaintiff is bound by [the apparent agent's] statements . . . if they were *justifiably relied upon* by the defendants." (Emphasis added.) Id., 70.

[20] Section 8 of the Restatement (Second), supra, provides: "Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons."

[21] Section 8 B of the Restatement (Second), supra, provides in relevant part: "(1) A person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability to persons who have changed their positions because of their belief that the transaction was entered into by or for him, if

"(a) he intentionally or carelessly caused such belief, or

"(b) knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts. . . .

"(3) Change of position, as the phrase is used in the restatement of this subject, indicates payment of money, expenditure of labor, suffering a loss or subjection to legal liability."

[22] Section 267 of the Restatement (Second), supra, provides: "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such."

[23] Section 2.03 of the Restatement (Third), supra, provides: "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."

[24] Section 7.08 of the Restatement (Third), supra, provides: "A principal is subject to vicarious liability for a tort committed by an agent in dealing or communicating with a third party on or purportedly on behalf of the principal when actions taken by the agent with apparent authority constitute the tort or enable the agent to conceal its commission."

[25] Section 429 of the Restatement (Second) of Torts, supra, provides: "One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants."

[26] See *Fletcher* v. *South Peninsula Hospital*, 71 P.3d 833, 840 (Alaska 2003) (apparent agency may be found when "the patient looks to the institution, rather than the individual physician, for care"), legislatively overruled in part as stated in *Evans ex rel. Kutch* v. *State*, 56 P.3d 1046, 1067 (Alaska 2002) (under state statute, hospital is not liable for negligence of physicians who are independent contractors if hospital provides notice that physicians are not agents or employees and physicians have required levels of malpractice insurance); *York* v. *Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 194, 854 N.E.2d 635 (2006) ("the reliance element of a plaintiff's apparent agency claim is satisfied if the plaintiff reasonably relies upon a hospital to provide medical care, rather than upon a specific physician"); *Paintsville Hospital Co.* v. *Rose*, 683 S.W.2d 255, 257 (Ky. 1985) (apparent agency applies when physician is "supplied through the hospital rather than being selected by the patient"); *Grewe* v. *Mt. Clemens General Hospital*, 404 Mich. 240, 251, 273 N.W.2d 429 (1978) ("the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for this problems"); *Hardy* v. *Brantley*, 471 So. 2d 358, 371 (Miss. 1985) ("[w]here a hospital holds itself out to the public as providing a given service . . . and where the hospital enters into a contractual arrangement with [independent contractor] physicians to direct and provide the service, and where the patient engages the services of the hospital without regard to the identity of a particular physician and where as a matter of fact the patient is relying upon the hospital to deliver the desired health care and treatment, the doctrine of respondeat superior applies and the hospital is vicariously liable for damages proximately resulting from the neglect, if any, of such physicians"), legislatively overruled in part as stated in *Brown* v. *Delta Regional Medical Center*, 997 So. 2d 195, 197 (Miss. 2008) (*Hardy* was overruled in part by state statute barring claims against state for acts of independent contractors); *Butler* v. *Domin*, 302 Mont. 452, 462–63, 15 P.3d 1189 (2000) ("a hospital may be liable if the hospital holds itself out as a provider of medical services and, in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the independent practitioner, to provide competent medical care"); *Renown Health* v. *Vanderford*, 126 Nev. 221, 227, 235 P.3d 614 (2010) (doctrine of ostensible agency applies "when a patient goes to the hospital and the hospital selects the doctor to treat the patient, such that it is reasonable for the patient to assume the doctor is an agent of the hospital"); *Hill* v. *St. Clare's Hospital*, 67 N.Y.2d 72, 80–81, 490 N.E.2d 823, 499 N.Y.S.2d 904 (1986) (doctrine of apparent agency applies "to hold a hospital or clinic responsible to a patient who sought medical care at the hospital or clinic rather than from any particular physician"); *Peter* v. *Vullo*,

758 S.E.2d 431, 439 (N.C. App. 2014) (apparent agency could be found when plaintiff sought services from hospital and hospital chose anesthesiologist); *Comer* v. *Risko*, supra, 106 Ohio St. 3d 188 (doctrine of agency by estoppel applies when "the hospital holds itself out to the public as a provider of medical services and . . . the patient looks to the hospital, not a particular doctor, for medical care" [internal quotation marks omitted]); *Roth* v. *Mercy Health Center, Inc.*, 246 P.3d 1079, 1090 (Okla. 2011) (doctrine of ostensible agency applies when "the patient, at the time of admittance, looks to the hospital solely for treatment of his or her physical ailments, with no belief that the physicians were acting on their own behalf rather than as agents of the hospital"); *Eads* v. *Borman*, 351 Ore. 729, 744, 277 P.3d 503 (2012) ("[t]he fact that the patient relies on the reputation of the hospital itself as a care provider, and does not make an independent selection as to which physicians the patient will obtain care from, provides the factual basis for the reliance needed for the apparent authority analysis" [internal quotation marks omitted]); *Capan* v. *Divine Providence Hospital*, 287 Pa. Super. 364, 368, 430 A.2d 647 (1980) (hospital may be held liable under doctrine of ostensible agency because "the changing role of the hospital in society creates a likelihood that patients will look to the institution rather than the individual physician for care"), abrogated by 40 Pa. Stat. Ann. § 1303.516 (2014) (hospital may be held liable under principles of ostensible agency when reasonably prudent person would be justified in belief that care in question was being rendered by hospital or its agents or care in question was advertised or represented to patient as care being rendered by hospital or its agents); *Simmons* v. *Tuomey Regional Medical Center*, 341 S.C. 32, 52, 533 S.E.2d 312 (2000) (doctrine of ostensible agency "is limited . . . to those situations in which a patient seeks services at the hospital as an institution, and is treated by a physician who reasonably appears to be a hospital employee"); *Boren ex rel. Boren* v. *Weeks*, 251 S.W.3d 426, 436 (Tenn. 2008) (doctrine of apparent agency applies when "[1] the hospital held itself out to the public as providing medical services; [2] the plaintiff looked to the hospital rather than to the individual physician to perform those services; and [3] the patient accepted those services in the reasonable belief that the services were provided by the hospital or a hospital employee"); *Burless* v. *West Virginia University Hospitals, Inc.*, 215 W. Va. 765, 777, 601 S.E.2d 85 (2004) ("[r]eliance . . . is established when the plaintiff looks to the hospital for services, rather than to an individual physician" [internal quotation marks omitted]); *Pamperin* v. *Trinity Memorial Hospital*, 144 Wis. 2d 188, 211, 423 N.W.2d 848 (1988) ("the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems" [internal quotation marks omitted]); *Sharsmith* v. *Hill*, 764 P.2d 667, 672 (Wyo. 1988) (doctrine of apparent agency applies "where the patient engages the services of the hospital without regard to the identity of a particular physician and where as a matter of fact the patient is relying upon the hospital to deliver the desired health care and treatment"), overruled in part by *Campbell County Memorial Hospital* v. *Pfeifle*, 317 P.3d 573, 581 (Wyo. 2014) (public hospitals cannot be held liable under doctrine of apparent agency).

Other courts have applied different standards in determining whether a hospital may be found liable for the negligence of a physician under the doctrine of apparent agency. See *Ermoian* v. *Desert Hospital*, 152 Cal. App. 4th 475, 503, 61 Cal. Rptr. 3d 754 (adopting reasonable belief standard), appeal denied, 2007 Cal. LEXIS 10631 (Cal. 2007); *Vanaman* v. *Milford Memorial Hospital, Inc.*, 272 A.2d 718, 722 (Del. 1970) (adopting justifiable reliance standard of § 267 of Restatement [Second] of Agency, supra); *Stone* v. *Palms West Hospital*, 941 So. 2d 514, 519–21 (Fla. App. 2006) (recognizing doctrine of apparent agency applies to hold hospital liable for negligence of physician who is not agent, but standard is unclear); *Richmond County Hospital Authority* v. *Brown*, 257 Ga. 507, 508–509, 361 S.E.2d 164 (1987) (adopting justifiable reliance standard of § 267 of Restatement [Second] of Agency, supra); *Bynum* v. *Magno*, 125 F. Supp. 2d 1249, 1266 (D. Haw. 2000) (under Hawaii law, plaintiff must show justifiable reliance), rev'd on other grounds, 55 Fed. Appx. 811 (9th Cir. 2003); *Jones* v. *HealthSouth Treasure Valley Hospital*, 147 Idaho 109, 117, 206 P.3d 473 (2009) (adopting reasonable belief standard of § 2.03 of Restatement [Third] of Agency, supra); *Sword* v. *NKC Hospitals, Inc.*, 714 N.E.2d 142, 152 (Ind. 1999) (adopting reasonable belief standard of § 429 of Restatement [Second] of Torts, supra); *Bradford* v. *Jai Medical Systems Managed Care Organization, Inc.*, 439 Md. 2, 18–19,

23, 93 A.3d 697 (2014) (plaintiffs must have justifiable or reasonable belief in agency relationship); *Hefner* v. *Dausmann*, 996 S.W.2d 660, 667 (Mo. App. 1999) (adopting detrimental reliance standard); *Dent* v. *Exeter Hospital, Inc.*, 155 N.H. 787, 792, 931 A.2d 1203 (2007) (applying reasonable belief standard); *Estate of Cordero ex rel. Cordero* v. *Christ Hospital*, 403 N.J. Super. 306, 314–18, 958 A.2d 101 (2008) (applying reasonable belief standard of § 2.03 of Restatement [Third] of Agency, supra, and § 429 of Restatement [Second] of Torts, supra); *Basil* v. *Wolf*, 193 N.J. 38, 67, 935 A.2d 1154 (2007) (stating in dictum that standard is reasonable belief); *Zamora* v. *St. Vincent Hospital*, 335 P.3d 1243, 1248 (N.M. 2014) (applying justifiable reliance standard); *Benedict* v. *St. Luke's Hospitals*, 365 N.W.2d 499, 504 (N.D. 1985) (doctrine of ostensible agency applies when plaintiff seeks services in emergency room); *Rodrigues* v. *Miriam Hospital*, 623 A.2d 456, 462 (R.I. 1993) (applying detrimental reliance standard); *Baptist Memorial Hospital System* v. *Sampson*, supra, 969 S.W.2d 948–49 (adopting justifiable reliance standard of § 267 of Restatement [Second] of Agency, supra); *Mohr* v. *Grantham*, 172 Wn. 2d 844, 860, 262 P.3d 490 (2011) (to establish apparent agency, belief of agency must be objectively reasonable).

[27] Courts in a number of cases involving claims against hospitals under the doctrine of apparent authority have held that a hospital can rebut this presumption by posting signs indicating that medical providers are not the agents or employees of the hospital or by requiring patients to sign disclaimers to that effect. See, e.g., *Sword* v. *NKC Hospitals, Inc.*, 714 N.E.2d 142, 152 (Ind. 1999) (citing cases and stating "[a] hospital generally will be able to avoid liability by providing meaningful written notice to the patient, acknowledged at the time of admission"). Some courts have also held, however, that such signs and disclaimers may not always be effective methods of avoiding liability in a hospital setting. Id. ("[u]nder some circumstances, such as in the case of a medical emergency . . . written notice may not suffice if the patient had an inadequate opportunity to make an informed choice"); compare *Menzie* v. *Windham Community Memorial Hospital*, supra, 774 F. Supp. 97 ("reliance" element of apparent agency claim was not satisfied when plaintiff was brought to hospital under emergency circumstances and did not choose particular hospital). This issue is not before us in the present case, however, and, therefore, we need not resolve it here.

[28] Numerous cases that have adopted this standard have relied on the fact that modern hospitals typically engage in extensive publicity campaigns to attract patients. See, e.g., *Kashishian* v. *Port*, 167 Wis. 2d 24, 38, 481 N.W.2d 277 (1992) ("Modern hospitals have spent billions of dollars marketing themselves, nurturing the image with the consuming public that they are full-care modern health facilities. All of these expenditures have but one purpose: to persuade those in need of medical services to obtain those services at a specific hospital. In essence, hospitals have become big business, competing with each other for health care dollars. As the role of the modern hospital has evolved, and as the image of the modern hospital has evolved [much of it self-induced], so too has the law with respect to the hospital's responsibility and liability towards those it successfully beckons." [Footnote omitted.]).

[29] Middlesex claims that, even if the plaintiff is not required to prove detrimental reliance on the principal's representations that the tortfeasor was its agent or employee when the principal selected the tortfeasor, we should limit the application of that doctrine to cases in which the plaintiff sought treatment in a hospital's emergency room. We disagree. Although a number of courts have held that "[t]he fact of seeking medical treatment in a hospital emergency room and receiving treatment from a physician working there is sufficient to satisfy [the elements of an apparent agency claim]" [internal quotation marks omitted]); *Stone* v. *Palms West Hospital*, 941 So. 2d 514, 520–21 (Fla. App. 2006); see also, e.g., *Richmond County Hospital Authority* v. *Brown*, 257 Ga. 507, 509, 361 S.E.2d 164 (1987) ("[i]n particular [the doctrine] has been applied to emergency room settings"); *Bynum* v. *Magno*, 125 F. Supp. 2d 1249, 1266 (D. Haw. 2000) (applying Hawaii law and concluding that "[w]here the patient was admitted to the [e]mergency [r]oom . . . the elements for apparent agency are more likely to be met, whatever test is used"); we see no reason why the doctrine should be *limited* to that situation. Rather, we conclude that the doctrine should apply whenever its elements have been established. See *Kashishian* v. *Port*, 167 Wis. 24, 44, 481 N.W.2d 277 (1992) (although three criteria for establishing apparent agency can be satisfied in emergency room setting, "[w]e can discern no reason to conclude, as a matter of law, that the doctrine of

apparent authority should not exist in other contexts concerning hospitals and independent physicians when all the elements are present"). Other settings in which the elements might be established might include a hospital operating room, when the hospital chose the anesthetist or nurses, or in a hospital clinic, when the plaintiff chose the clinic and the clinic selected the specific provider of services.

––––––––––––––––––––––––––––