******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

PAUL DUSHAY ET AL. *v.* SOUTHERN CONNECTICUT
HOCKEY LEAGUE, LLC, ET AL.
(AC 46788)

Alvord, Suarez and Clark, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment rendered after it granted the defendant's motion for summary judgment on his negligence claim relating to injuries he sustained during a hockey practice at an ice rink owned and operated by W Co. The plaintiff claimed, inter alia, that the court improperly concluded that the defendant did not owe him a duty of care to ensure that his hockey team's practices were safe. *Held*:

The trial court correctly determined that there was no genuine issue of material fact that the defendant did not owe the plaintiff a duty of care, as there was no evidence presented indicating that the defendant reasonably could have foreseen the plaintiff's injuries.

Contrary to the plaintiff's claim, there was no genuine issue of material fact as to whether W Co. was acting as the defendant's agent or apparent agent during the practice when the plaintiff was injured, as the plaintiff did not present any evidence beyond mere assertions and conclusory statements that W Co. was acting as the defendant's agent with respect to practices and no reasonable juror could find actual or apparent agency under the circumstances of this case.

Argued February 3—officially released August 26, 2025

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where Connor Dushay was substituted as the plaintiff; thereafter, the court, *Saadi, J.*, granted the named defendant's motion for summary judgment and rendered judgment thereon, from which the substitute plaintiff appealed to this court; subsequently, the complaint was withdrawn as to the defendant Wonderland of Ice Associates, Inc. *Affirmed.*

*Michael E. Skiber*, for the appellant (substitute plaintiff).

*Nathan S. Rosadini*, for the appellee (named defendant).

*Opinion*

SUAREZ, J. The plaintiff Connor Dushay[1] appeals from the summary judgment rendered by the trial court in favor of the defendant Southern Connecticut Hockey League, LLC,[2] on his claim of negligence relating to injuries he sustained during a hockey practice. On appeal, the plaintiff claims that (1) the court improperly concluded that the defendant did not owe him a duty of care, and (2) there was a genuine issue of material fact as to whether Wonderland of Ice Associates, Inc. (Wonderland), was acting as the defendant's agent or apparent agent, or with apparent authority, at the time of the incident in question. We affirm the judgment of the court.

The following facts, viewed in the light most favorable to the plaintiff, and procedural history are relevant to this appeal. The defendant is a for-profit hockey league that offers divisions for youth athletes. In exchange for a registration fee, the defendant organizes and schedules ice time with local ice rinks for league games. Between April and June, 2018, the defendant held a spring league for high school age players (2018

---

[1] Connor Dushay was a minor at the time this action was commenced. Accordingly, his parents, the plaintiffs Paul Dushay and Ruth Dushay (parents), commenced this action as next friends on his behalf. After he reached the age of majority, the trial court granted the parents' motion to substitute Connor Dushay as the plaintiff. For clarity, all references in this opinion to the plaintiff are to Connor Dushay.

[2] Wonderland of Ice Associates, Inc. (Wonderland), was also named as a defendant in this action. The plaintiff withdrew his claim against Wonderland, which is not participating in this appeal. Accordingly, we refer in this opinion to Southern Connecticut Hockey League, LLC, as the defendant and to Wonderland by name.

spring season). A flyer created by the defendant advertising the 2018 spring season stated that it would include a "[ten] game season plus playoffs." The flyer does not state that practices are included in the 2018 spring season. Games for the 2018 spring season took place at local ice rinks in southern Connecticut, including Wonderland, which posted the defendant's flyer on its premises. The defendant and Wonderland entered into a written agreement with respect to the usage of Wonderland's facilities for 2018 spring season games. When its ice rink is not otherwise rented, Wonderland offers "ice time" to local players.

The plaintiff registered as a participant for the 2018 spring season. The plaintiff's team, the Jesuits, played their home games at Wonderland during the 2018 spring season. Wonderland offered the Jesuits ice time, or "open ice," when its ice rink was not otherwise rented.

On May 7, 2018, a group of Jesuits players, including the plaintiff, was at Wonderland, making use of "open ice" time. No coaches or other officials were present. While on the ice, one of the plaintiff's teammates began to bully the plaintiff. The bullying culminated in the plaintiff's teammate sticking his hockey stick inside one of the plaintiff's skates and pulling his feet out from under him. The plaintiff fell, fracturing the tibia and fibula of his right leg.

On April 16, 2020, the present action was commenced. The complaint alleged that the plaintiff's injuries were caused by the defendant's negligence for, inter alia, failing "to provide adequate supervision during practice sessions," "to ensure that practice sessions would be held in a safe manner," and "to otherwise exercise a reasonable degree of care with respect to practice sessions." The defendant filed an answer and advanced three special defenses, including that any injuries sustained by the plaintiff were caused by the negligence

of other individuals or entities "over which [it] had no control." On November 14, 2022, the defendant filed a motion for summary judgment and an accompanying memorandum of law, arguing that it did not owe the plaintiff a duty of care when he was injured at the practice because the defendant's league did not include practices.

In support of its motion for summary judgment, the defendant provided the court with documentary exhibits, including excerpts of deposition testimony from the plaintiff and his father, Paul Dushay; an affidavit of Daniel DiLauro, the owner of the defendant; and the flyer created by the defendant advertising the 2018 spring season.[3] In his affidavit, DiLauro averred that the defendant does not "own, maintain, control, and/or possess any ice rinks or ice skating facilities"; "[n]o additional ice time or team practices were included in the registration and entry fee with the [defendant] for the 2018 spring league season"; "[a]t no point did the [defendant] ever schedule, offer, provide, and/or supervise any additional ice time or team practices for [the plaintiff] or his hockey team at Wonderland . . . [on] or around [the date of the plaintiff's injury]"; and "[a]ny additional team practices or 'stick-times' the plaintiff claims he participated in were at the discretion of the local rinks and were completely distinct and separate from the [defendant] and the [ten] game season." Moreover, the spring 2018 season flyer makes no mention of team practices.

---

[3] We note that, in the appendices to their principal appellate briefs, the parties have included pages of certain deposition testimony that were not included in the exhibits before the trial court when it ruled on the defendant's motion for summary judgment. We decline to consider any evidence that was not included in the parties' written submissions before the trial court. See, e.g., *Fiorelli* v. *Gorsky*, 120 Conn. App. 298, 307 n.3, 991 A.2d 1105 (evidence that was not before trial court when it decided motion for summary judgment will not be considered on appeal), cert. denied, 298 Conn. 933, 10 A.3d 517 (2010).

On May 22, 2023, the plaintiff filed an opposition to the defendant's motion for summary judgment. In his memorandum of law, the plaintiff contended that he presented sufficient evidence from which a reasonable jury could find that the defendant owed him a duty of care as a matter of law or, alternatively, that Wonderland had acted as the defendant's agent or apparent agent. In support thereof, the plaintiff submitted as exhibits (1) excerpts of deposition testimony from the plaintiff; John Ferguson, a hockey director for Wonderland; John Dilley, a volunteer who organized the Jesuits team for the 2018 spring season; and DiLauro, (2) the agreement between the defendant and Wonderland concerning the 2018 spring season, and (3) certain email correspondence. Section 1.1 of the written agreement between the defendant and Wonderland provides that Wonderland will provide "[i]ce time, *for games* . . . per the submission by [the defendant] . . . . Additional ice [slots] may be scheduled by written submission, based on availability." (Emphasis added.)

On August 7, 2023, the court issued a memorandum of decision granting the defendant's motion for summary judgment. The court noted that it was undisputed that the ice rink where the plaintiff was injured was owned and operated by Wonderland. The court rejected the plaintiff's arguments that the 2018 spring season included practices on the basis of the flyer and the written agreement, each of which only referenced games. The court determined that there was "no evidence in the record that [could] reasonably support a conclusion that the defendant . . . had the right to possess the rink at issue, [that it] had the ability to control the playing conditions, or that [it] had made any representations to that effect." As to the plaintiff's claim of negligent supervision, the court noted that there was no reasonable basis for the plaintiff's claim that the defendant was responsible for supervising hockey practices at

Wonderland's ice rink. The court also rejected the plaintiff's agency argument, stating that there was "no evidence or allegation beyond the plaintiff's mere conclusory assertions of an agency relationship between [the defendant] and [Wonderland]," and, therefore, no reasonable fact finder could determine that an agency relationship existed as to the practice at which the plaintiff was injured. The court concluded that the defendant met its burden of "showing the nonexistence of any issue of material facts as to whether it owed a duty of care to the plaintiff." The court therefore rendered summary judgment in favor of the defendant. This appeal followed.

We begin our review of the summary judgment rendered by the trial court by setting forth our well established standard of review. "The standards governing our review of a court's decision to grant a defendant's motion for summary judgment are well settled. Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and [only on such a showing] the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of

material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Eldridge* v. *Hospital of Central Connecticut*, 230 Conn. App. 666, 670, 330 A.3d 604 (2025).

"[T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Moreover, [t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact. . . . Mere statements of legal conclusions . . . and bald assertions, without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment." (Internal quotation marks omitted.) *Gough* v. *Saint Peter's Episcopal Church*, 143 Conn. App. 719, 728–29, 70 A.3d 190 (2013).

I

The plaintiff first claims that the court improperly concluded that the defendant did not owe him a duty of care. Specifically, he argues that the evidence in the record, viewed in the light most favorable to the plaintiff as the nonmoving party, raised a dispute as to whether the defendant owed the plaintiff a duty of care to ensure that the Jesuits' "team practices" during the 2018 spring season were safe.[4] We disagree.

---

[4] The plaintiff also asserts that the trial court applied an incorrect legal standard relating to the issue of the defendant's duty. Specifically, he argues that the court did not specifically analyze the foreseeability or the public

"[A] cause of action in negligence is comprised of four elements: duty; breach of that duty; causation; and actual injury. . . . Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." (Internal quotation marks omitted.) *Roux* v. *Coffey*, 230 Conn. App. 130, 139, 330 A.3d 253, cert. denied, 351 Conn. 915, 331 A.3d 1217 (2025).

"Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner. . . . Nevertheless, [t]he issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment because the question is one of law. . . . The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation

policy prongs of a duty analysis. The defendant counters that, "[d]espite not saying the word 'foreseeable,' the court evaluated whether the [defendant] knew and/or had control over the hockey practice in question . . . [and] acknowledged that there was 'not a modicum of evidence in the record to serve as a reasonable basis for the plaintiff's claims that the [defendant] was responsible for supervising the hockey practices . . . .'" A fair reading of the court's memorandum of decision leads us to conclude that the court implicitly found that it was not foreseeable that an ordinary person in the defendant's position would have foreseen the harm that resulted in the present case. See, e.g., *Berman* v. *Berman*, 203 Conn. App. 300, 311, 248 A.3d 49 (2021) (fair reading of court's memorandum of decision revealed that court implicitly found substantial change in circumstances).

Moreover, on our plenary review, for the reasons explained subsequently in this opinion, we agree with the court's conclusions as a matter of law. See, e.g., *Jarmie* v. *Troncale*, 306 Conn. 578, 583–84, 50 A.3d 802 (2012) (concluding, after conducting common-law duty analysis, that trial court correctly concluded that plaintiff did not adequately allege common-law duty of care in case in which plaintiff asserted that trial court should have undertaken "particularized examination" of foreseeability and public policy prongs).

at hand. . . . [Our Supreme Court has] stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for [his] negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Streifel* v. *Bulkley*, 195 Conn. App. 294, 304–305, 224 A.3d 539, cert. denied, 335 Conn. 911, 228 A.3d 375 (2020).

"Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result . . . ." (Internal quotation marks omitted.) *Jarmie* v. *Troncale*, 306 Conn. 578, 590, 50 A.3d 802 (2012).

The crux of the present appeal is whether the defendant owed a duty to the plaintiff. The dispositive issue, therefore, is whether the specific harm alleged by the plaintiff was foreseeable to the defendant. "The first inquiry in the two-pronged test for the existence of a

legal duty requires determining whether an ordinary person in the defendant's position, knowing what the defendants knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result." *Gough* v. *Saint Peter's Episcopal Church*, supra, 143 Conn. App. 730; see also id., 729–30 ("[t]he ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised" (internal quotation marks omitted)).

With these principles in mind, we turn to the evidence presented to the trial court for consideration in ruling on the defendant's motion for summary judgment. A review of the undisputed evidence demonstrates that the defendant established that it did not possess or control Wonderland's ice rink, where the May 7, 2018 practice at issue took place, and that there was no evidence presented that the defendant was involved in or had any knowledge of the practice such that it reasonably could have foreseen the plaintiff's injuries.

The defendant offered evidence through DiLauro's affidavit that it contracts with local rinks to conduct league games, that the defendant did not possess or control Wonderland's ice rink, the premises where the injury occurred, and that "[n]o additional ice time or team practices were included in the registration and entry fee . . . ." It is undisputed that the plaintiff's injuries did not occur during a game. The defendant also submitted the flyer that it created for the 2018 spring season that explicitly states that the registration fee includes a "[ten] game season plus playoffs." The burden then shifted to the plaintiff to dispute that evidence. As previously noted, in support of his opposition, the plaintiff submitted the agreement between Wonderland and the defendant, deposition testimony of various witnesses, and email correspondence in an attempt to establish that there was a genuine issue of material fact

that the defendant owed a duty to the plaintiff to ensure that coaches supervised "team practice sessions . . . ."

After reviewing the parties' submissions, the court concluded that the defendant met its burden of showing the nonexistence of any material facts as to whether it owed a duty of care to the plaintiff. The court rejected the plaintiff's argument that there was a genuine issue of material fact as to whether the 2018 spring season included practices. Although the plaintiff pointed to an email that Paul Dushay had sent to Dilley in which he indicated that he believed that the defendant was responsible for supervising practices,[5] the court rejected that statement as "no more than a mere assertion of thought without a modicum of supporting evidence in the record . . . ."[6]

Applying the governing legal principles to the facts of the present case, we conclude that the defendant did not owe the plaintiff a duty of care. Specifically, the plaintiff did not establish a genuine issue of material fact as to whether the defendant knew or should have known that the plaintiff was attending a May 7, 2018 practice at which he could have been injured. The evidence, instead, established unequivocally that the 2018 spring season included only games, and not practices.

---

[5] The record indicates that Paul Dushay sent an email to Dilley after the incident in question, stating: "[L]ast week at an unsupervised uncoached practice involving horseplay, [the plaintiff] suffered a compound fracture to his leg requiring major surgery to repair. I thought this league had adult supervision, I guess I was wrong."

[6] We note that the plaintiff argued that the trial court improperly focused "on the ownership or physical control of the premises in question, without crediting the plaintiff's argument that the control of the premises was not determinative because the plaintiff alleged a claim of negligence and that [the defendant] had a duty [to supervise the practice] . . . ." This argument ignores that the court explicitly analyzed the plaintiff's negligent supervision claim and stated that the plaintiff did not provide anything more than a mere assertion in support of his claim that the defendant "was responsible for supervising the hockey practices at [Wonderland's] ice rink."

Without any evidence indicating that the defendant reasonably could have foreseen the harm that was caused, the plaintiff's argument that the defendant owed a duty to supervise the practice must fail.

The only evidence in the record that the plaintiff has pointed to that relates to practices is Paul Dushay's email and deposition testimony, which reflect his belief that the defendant's 2018 spring season included practices.[7] We agree with the trial court that this conclusory assertion was not enough to create a genuine issue of material fact with respect to this issue, in light of the clear evidence in the record revealing that practices were *not* included. See, e.g., *Bisson* v. *Wal-Mart Stores, Inc.*, 184 Conn. App. 619, 626, 195 A.3d 707 (2018) ("[m]ere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]" (internal quotation marks omitted)).

The plaintiff argues that the court did not review the evidence in the light most favorable to him and "improperly made findings concerning disputed material facts." The plaintiff lists several facts that he claims created genuine issues of material fact as to the defendant's duty of care. In so doing, the plaintiff makes various conclusory assertions as to alleged factual issues, without referring to any evidence in support of those assertions. See, e.g., *Cazenovia Creek Funding I, LLC* v. *White Eagle Society of Brotherly Help, Inc., Group 315, Polish National Alliance*, 351 Conn. 722, 731, 333 A.3d 508 (2025) ("[i]t is not enough . . . for the opposing party merely to assert the existence of . . . a disputed issue" (internal quotation marks omitted)); *Agosto* v.

---

[7] To the extent that Paul Dushay testified that he believed he saw "a poster at [Wonderland's ice rink] saying that [the defendant's league included] practices and games," there is no such poster in the record before this court.

*Premier Maintenance, Inc.*, 185 Conn. App. 559, 569–70, 197 A.3d 938 (2018) ("a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment" (internal quotation marks omitted)).

The plaintiff first points to the undisputed fact that the defendant organized the 2018 spring season. That fact, however, does not create any dispute as to the *scope* of the 2018 spring season and whether it included practices. The plaintiff also states that his injuries "occurred in the course of [the defendant's] 2018 spring league season." Although it is true that the incident occurred on May 7, 2018, during the same time frame as the 2018 spring season, that does not necessarily bring the practice at which the plaintiff was injured within the scope of risk that the defendant should reasonably have foreseen. Likewise, the plaintiff asserts that his injuries occurred at a team practice, again without referring to any evidence that practices were included in the 2018 spring season.

The plaintiff also relies on the defendant's flyer advertising the 2018 spring season in support of his assertion that his injuries "occurred during one of the Jesuits' team practices at [Wonderland's ice rink], a rink featured and designated by [the defendant]" in the flyer. The flyer, however, is clear: the 2018 spring season included a "ten game season plus playoffs." Nothing in the flyer states that practices were included in a team's registration fee. The flyer explicitly states that the registration fee is "$3,250 per team: [ten] games plus playoffs with [b]est of [t]hree [s]eries [f]inals." This evidence, therefore, supports, rather than contradicts, the court's conclusion that the 2018 spring season did not include practices.

The agreement between the defendant and Wonderland is equally clear. Wonderland agreed to provide ice

time "for games" to the defendant for the 2018 spring season. Although the agreement states that additional ice slots "may be scheduled by written submission," no such additional written submissions are in the record. To the extent that the plaintiff argues that the agreement does not contain a provision specifically *excluding* practices, we decline to read additional language into the agreement. "In interpreting a contract courts cannot add new or different terms." (Internal quotation marks omitted.) *Brown* v. *Brown*, 199 Conn. App. 134, 150, 235 A.3d 555 (2020).

The plaintiff asserts that the facts that Wonderland collected fees for the 2018 spring season and made ice time available to players who were also participating in the league create genuine issues of material fact that "[the defendant] knew or should have known that [the] Jesuits team would have team practices at [Wonderland's ice rink]." The fact that Wonderland collected fees for the defendant may have been relevant to their relationship within the scope of the 2018 spring season, but, as stated previously, the 2018 spring season included only games. Furthermore, the plaintiff has not submitted any evidence indicating that the defendant was involved in any way with Wonderland's offering ice time to players when its rink was not otherwise reserved. Although the plaintiff refers to an email from DiLauro that he claims demonstrates DiLauro's awareness that Dilley was involved with the Jesuits, our review of the email in question reveals that it, too, explicitly related to games. DiLauro's email stated: "I would appreciate if everyone who committed to the team can make an effort and attend the remaining *games* on your schedule." (Emphasis added.) As the court noted, Dilley testified in his deposition that he coordinated practices "on behalf of Wonderland . . . ."

Although the plaintiff asserts that he was entitled to have the issue of foreseeability decided by a jury, we conclude that reasonable minds could not differ as to whether the harm inflicted in the present case was foreseeable to the defendant. "Many harms are quite literally foreseeable . . . [but] liability attaches only for *reasonably* foreseeable consequences." (Emphasis in original; internal quotation marks omitted.) *Gough* v. *Saint Peter's Episcopal Church*, supra, 143 Conn. App. 731. Moreover, "[t]he fundamental purpose of summary judgment is preventing unnecessary trials. . . . If a plaintiff is unable to present sufficient evidence in support of an essential element of his cause of action at trial, he cannot prevail as a matter of law." (Internal quotation marks omitted.) *Hassiem* v. *O & G Industries, Inc.*, 197 Conn. App. 631, 636, 232 A.3d 1139, cert. denied, 335 Conn. 928, 235 A.3d 525 (2020). We therefore conclude that the harm that the plaintiff's teammate[8] intentionally inflicted on him was not reasonably foreseeable and that the defendant satisfied its burden of showing that it was "quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) *Agosto* v. *Premier Maintenance*, supra, 185 Conn. App. 568–69. Accordingly, the court correctly determined that there was no genuine issue of material fact that the defendant did not owe the plaintiff a duty of care.[9]

---

[8] In light of our conclusion that the defendant did not owe a duty of care with respect to practices, we need not address the defendant's argument that it was not liable for the intentional conduct of the plaintiff's teammate in the absence of a "special relationship of custody or control . . . ." (Internal quotation marks omitted.)

[9] Because we determine that there is no duty of care on the basis of our conclusion that the harm was not reasonably foreseeable, it is not necessary to analyze the second prong of the test by undertaking a public policy analysis. See, e.g., *Gough* v. *Saint Peter's Episcopal Church*, supra, 143 Conn. App. 732 n.7.

## II

The plaintiff next claims that there was a genuine issue of material fact as to whether Wonderland was acting as the defendant's agent or apparent agent[10] at the time of the practice in question.[11] Specifically, the plaintiff argues that there was evidence in the record on the basis of which a reasonable jury could find that Wonderland was acting as the defendant's agent with regard to the 2018 spring season and that the court failed to view the record in the light most favorable to him in determining that there was no such agency relationship with respect to practices. We disagree.

"Three elements are required to show the existence of an agency relationship: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. . . . Although stated as a three part test, [our Supreme Court] has also acknowledged there are various factors to be considered in assessing whether [an agency] relationship exists [that] include: whether the alleged principal has the right to direct and control the work of the agent; whether the agent is engaged in a distinct occupation; whether the principal or the agent supplies the instrumentalities,

---

[10] The plaintiff's appellate brief relies on the doctrines of apparent agency and apparent authority interchangeably. We note that these are distinct doctrines; see *Cefaratti* v. *Aranow*, 321 Conn. 593, 601 n.6, 141 A.3d 752 (2016); and that the plaintiff did not raise, and the trial court did not address, the issue of apparent authority. To the extent the plaintiff claims for the first time on appeal that there was a genuine issue of material fact with respect to whether Wonderland acted with the apparent authority of the defendant, we decline to address that unpreserved claim.

[11] We note that the plaintiff's complaint does not allege an agency relationship or a claim of vicarious liability, and the issue of agency was first raised in his opposition to the defendant's motion for summary judgment. Because the trial court addressed the plaintiff's argument, and the defendant has not argued that it is not properly before us, we address this claim.

tools, and the place of work; and the method of paying the agent. . . . In addition, [a]n essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal." (Internal quotation marks omitted.) *Bank of America, N.A.* v. *Gonzalez,* 187 Conn. App. 511, 516–17, 202 A.3d 1092 (2019). Although we agree with the plaintiff that agency is ordinarily a question of fact, "when no reasonable fact finder could find that an agency relationship existed . . . then the issue of agency becomes a legal question." (Citation omitted.) *Yale University* v. *Out of the Box, LLC,* 118 Conn. App. 800, 807 n.5, 990 A.2d 869 (2010).

Apparent agency may be established in tort cases in one of two ways. "First, the plaintiff may establish apparent agency by proving that: (1) the principal held itself out as providing certain services; (2) the plaintiff selected the principal on the basis of its representations; and (3) the plaintiff relied on the principal to select the specific person who performed the services that resulted in the harm complained of by the plaintiff. Second, the plaintiff may establish apparent agency in a tort action . . . by establishing that: (1) the principal held the apparent agent or employee out to the public as possessing the authority to engage in the conduct at issue, or knowingly permitted the apparent agent or employee to act as having such authority; (2) the plaintiff knew of these acts by the principal, and actually and reasonably believed that the agent or employee or apparent agent or employee possessed the necessary authority . . . and (3) the plaintiff detrimentally relied on the principal's acts, i.e., the plaintiff would not have dealt with the tortfeasor if the plaintiff had known that the tortfeasor was not the principal's agent or employee." (Citation omitted.) *Cefaratti* v. *Aranow,* 321 Conn. 593, 624–25, 141 A.3d 752 (2016). With respect to the second standard, our Supreme Court has "emphasize[d] that this standard is narrow, and . . . that it

will be only in the rare tort action that the plaintiff will be able to establish the elements of apparent agency by proving detrimental reliance." Id., 625.

Our review of the evidence in the record reveals that there is no genuine issue of material fact that Wonderland was not acting as the defendant's agent or apparent agent with respect to practices. As we stated in part I of this opinion, the court correctly concluded that there was no genuine issue of material fact that practices were not included in the defendant's 2018 spring season. The only evidence in the record regarding practices reveals that these sessions were offered as "ice time" by Wonderland to players and/or their parents. Dilley testified in his deposition that Wonderland would "[d]irectly" reach out to him to schedule ice time if the Jesuits wanted to practice. Ferguson similarly testified that he would offer ice time to local players "[i]f [he] had it available." None of the witnesses affiliated with Wonderland or the defendant, therefore, provided any evidence that the defendant was involved in any way with or made aware of practice sessions. Upon our plenary review, we conclude that any evidence of a relationship between the defendant and Wonderland, including the written agreement that explicitly defined the scope of that relationship, applied only to 2018 spring season games. There is no evidence in the record that the defendant manifested an intention that Wonderland would host practices on behalf of the defendant, as required to establish an agency relationship with respect to practices. Nor is there evidence that the defendant either held itself out as providing practices in connection with the 2018 spring season or held Wonderland out as having the authority to host such practices on the defendant's behalf, as required to establish apparent agency.

The plaintiff points to several pieces of evidence in the record in an attempt to establish a genuine issue

of material fact as to actual or apparent agency. Specifically, he points to the agreement between the defendant and Wonderland; however, that agreement specifically references only games. See part I of this opinion. There also was evidence that Wonderland posted the defendant's flyer at its premises and that Ferguson, the hockey director at Wonderland, collected entry fees for the defendant's 2018 spring season. This evidence could have constituted evidence of an agency relationship for games within the scope of the 2018 spring season but not for unofficial practices that were not included therein. The plaintiff also points to the deposition testimony of Paul Dushay, in which he stated that he believed that the participation fee included practices and games, and that Ferguson was an agent of the defendant. The court concluded, however, and we agree, that the plaintiff did not present any evidence beyond mere assertions and conclusory statements that Wonderland was acting as an agent for the defendant with respect to practices. Such assertions do not supply the factual predicate necessary to create a genuine issue of material fact. See, e.g., *Bisson* v. *Wal-Mart Stores, Inc.*, supra, 184 Conn. App. 641 ("when opposing parties tell two different contradictory stories, one of which is contradicted by [the] record so that no reasonable jury could believe it, [the] court should not adopt that version of [the] facts"); *Yancey* v. *Connecticut Life & Casualty Ins. Co.*, 68 Conn. App. 556, 561, 791 A.2d 719 (2002) (vague generalizations may not supply factual predicate to raise genuine issue of material fact). The plaintiff offered no evidence that the defendant held out Wonderland as having authority to hold official league "practices," particularly when such practices were not included in the 2018 spring season. See, e.g., *Hallas* v. *Boehmke & Dobosz, Inc.*, 239 Conn. 658, 674–75, 686 A.2d 491 (1997) (concluding that no reasonable juror could find agency relationship when there was

no evidence that alleged principal held out agent to plaintiffs as having authority to bind it). To the extent that the plaintiff subjectively believed that an agency relationship existed, the belief was not reasonable based on the other evidence presented.[12] See 1 Restatement (Third), Agency § 2.05, comment (c), p. 146 (2006) ("[t]he operative question is whether a reasonable person in the position of the third party would believe such an agent, as the actor appears to be, to have authority to do a particular act").

The plaintiff also argues that the practices were conducted "for the benefit of [the defendant's] 2018 spring league team, the Jesuits team, and for the benefit of the league, which also is relevant to the question of agency." It is true that "[a]n essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal." (Internal quotation marks omitted.) *Wesley* v. *Schaller Subaru, Inc.*, 277 Conn. 526, 543, 893 A.2d 389 (2006). In the present case, however, there is no evidence that the practices were scheduled or held at the behest of, or for the benefit of, the defendant. See, e.g., *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 120, 138, 464 A.2d 6 (1983) (trial court correctly determined that there was insufficient evidence to establish agency relationship when there was no evidence that agent was working for benefit of principal). Ferguson testified that Wonderland offered ice time to local players free of charge. Only Wonderland was involved in the scheduling of open ice time

---

[12] We also reject the plaintiff's arguments that the defendant's flyer and the agreement between Wonderland and the defendant "did not expressly advise parents or interested youth that 2018 spring league team practices were excluded." These arguments essentially ask us to impose an affirmative duty on the defendant, by mere implication, for an injury that occurred outside the scope of the defendant's relationship with the plaintiff. We decline to do so. See 2 Restatement (Third), Torts § 40, p. 39 (2012) ("[a]n actor in a special relationship with another owes the other a duty of reasonable care with regard to risks that arise *within the scope of the relationship*" (emphasis added)).

for practices. To the extent that the plaintiff argues that the practices, apart from any pecuniary benefit, would enhance the skills of the 2018 spring season participants, thereby benefitting the defendant, such an indirect benefit is insufficient to hold the defendant liable. To conclude otherwise could lead to absurd results. For example, under the plaintiff's conception, a pickup practice held at a local park by team members would be sufficient to hold a sports league liable for injuries at the practice, even if the practice was not part of official league activities, merely because the practice improved the players' skills and, as a result, enhanced the level of play during games.

Therefore, we conclude that no reasonable juror could find actual or apparent agency in these circumstances. Accordingly, we reject the plaintiff's second claim.

The judgment is affirmed.

In this opinion the other judges concurred.